[Cite as *In re R.L.*, 2022-Ohio-115.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: R.L.

C.A. No.    29993

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 19 11 0968

DECISION AND JOURNAL ENTRY

Dated: January 19, 2022

HENSAL, Presiding Judge.

{¶1} Appellant Father appeals the judgment of the Summit County Court of Common Pleas that terminated the protective supervision of Appellee Summit County Children Services Board ("CSB" or the "agency"), maintained his child in the legal custody of Appellee Mother, and granted Father limited supervised visitation. This Court affirms.

I.

{¶2} Father and Mother are the biological parents of R.L. (d.o.b. 9/11/2015). The parents were never married but lived together for approximately five years before Mother left their home in North Carolina with her older child and R.L. for a domestic violence shelter. Shortly thereafter, Mother moved with the children to Ohio without notifying Father. At all times during this case, Father has continued to reside in North Carolina.

{¶3} In Ohio, Mother was working approximately 80 hours each week outside the home. She left her children in the care of an aunt during those times. On two occasions, the

then-three-year-old R.L. was spotted walking alone outside near the roadway. Police officers attempted to return the child to Mother, but they instead took R.L. and his sibling into custody pursuant to Rule 6 of the Rules of Juvenile Procedure based on deplorable conditions in the home.

{¶4} After investigating, CSB filed a complaint alleging that R.L. was an abused, neglected, and dependent child.[1] The agency dismissed its complaint without prejudice but refiled it approximately six months later. The complaint included factual allegations that Mother's home was very hot, filled with trash, smelled of marijuana, and contained very limited food and no working stove. Mother admitted using marijuana on a daily basis while caring for her children. R.L.'s sibling disclosed sexual abuse in the home. In addition, Mother was using a caregiver who slept during the day instead of watching the children. The agency subsequently filed an amended complaint which added allegations regarding Father. Specifically, CSB alleged that Father reported prior drug-related criminal convictions and a history of child welfare agency involvement regarding his two now-adult children. In addition, the agency had concerns regarding Father's mental health based on various assertions he made to the caseworker.

{¶5} After an adjudicatory hearing, the juvenile court dismissed the agency's allegations of abuse and neglect but found R.L. to be a dependent child. Upon consideration of evidence presented at the dispositional hearing, the juvenile court placed R.L. in the temporary custody of CSB and adopted the agency's case plan as an order. The child was placed with a maternal uncle and his wife.

---

[1] CSB also filed a complaint regarding R.L.'s sibling, although that complaint is not in the record before this Court.

{¶6} The case plan included counseling, substance abuse, and basic needs objectives for Mother. Father was required to engage with the agency caseworker, identify potential caregivers for the child, cooperate with the Interstate Compact on the Placement of Children ("ICPC") process, sign all necessary releases, and cooperate with all recommendations for services related to any identified concerns. The ICPC later denied approval for placement of the child with Father based on a home study which identified concerns regarding Father's mental health. CSB attempted to amend the case plan to add a requirement for Father to obtain a mental health assessment and follow all recommendations, but Father objected.

{¶7} Within a couple months of the child's placement with relatives, CSB filed a motion for an emergency placement change because R.L.'s uncle left the child at Mother's home after claiming to be unable to maintain the child's placement. The agency requested an order of legal custody of the child to Mother while maintaining protective supervision. The guardian ad litem agreed that Mother was able to resume legal custody based on her demonstrated compliance with her case plan objectives and the earlier successful return of the child's sibling to Mother's home.

{¶8} After a review hearing, the juvenile court terminated the agency's temporary custody, placed R.L. in Mother's legal custody under the agency's protective supervision, and granted Father twice weekly video visitation and a monthly two-hour in person supervised visit with the child. The court found that, after Father's ICPC was denied because he needed to obtain a mental health assessment and follow all recommendations, Father apparently submitted to such an assessment which further recommended a substance abuse assessment. When the agency caseworker tried to obtain information about Father's assessments, she learned that Father had

revoked his release of information, precluding her ability to assess Father's progress on his case plan objectives.

{¶9}    A couple months later, CSB filed a motion to terminate its protective supervision based on Mother's continued demonstration of her ability to provide a safe and stable home for R.L.  The agency also filed an amended case plan that the juvenile court adopted.  Father was required to engage with the agency and sign all necessary releases based on concerns identified during the ICPC process and giving rise to the denial of Father as a placement option for the child.  Father filed a motion for legal custody and a proposed shared parenting plan.

{¶10}  After a sunset dispositional hearing, the magistrate granted CSB's motion to terminate its protective supervision and maintained R.L. in Mother's legal custody.  The magistrate denied Father's motion for legal custody and his alternative motion to adopt his proposed shared parenting plan.  Father was granted twice weekly video visitation and a once monthly four-hour in person supervised visit with the child as Mother and Father might arrange.

{¶11}  Father filed timely objections to the magistrate's decision.  He supplemented his objections after the hearing transcript was filed and challenged the limited award of visitation and the failure to adopt the proposed shared parenting plan.  After its review, the juvenile court overruled Father's objections and reiterated the orders in the magistrate's decision.  R.L. remains in the unrestricted legal custody of Mother.  Father filed a timely appeal and raises one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR**

[FATHER] WAS DENIED HIS FUNDAMENTAL AND CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS MADE APPLICABLE TO THE STATES BY AND THROUGH THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION.

{¶12} Father argues that his trial counsel was ineffective by allegedly mismanaging his examination of Mother whom he called as a witness. He further argues that counsel was ineffective for failing to object to certain testimony that portrayed Father in a bad light. This Court disagrees.

{¶13} To establish a claim of ineffective assistance of counsel, Father must demonstrate that his trial counsel's performance was deficient, and that the deficient performance prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A "deficient performance" is one that fell below an objective standard of reasonableness. *Id.* at 687-688. To establish prejudice, Father must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. This Court may dispose of a claim of ineffective assistance of counsel based solely on the appellant's failure to demonstrate the requisite prejudice. *In re K.J.*, 9th Dist. Summit No. 29585, 2020-Ohio-1479, ¶ 7, citing *In re A.B.*, 9th Dist. Wayne Nos. 04CA0017 and 04CA0018, 2004-Ohio-4724, ¶ 7.

{¶14} Although Father's counsel called Mother as a fact witness rather than as if on cross examination and did not object to certain testimony elicited by Mother's attorney, Father cannot demonstrate that, but for counsel's errors, if any, the outcome of the proceeding would have been different. Father complains that his attorney gave Mother the "opportunity to provide damaging narratives" which compelled the juvenile court to grant him only four hours of supervised in person visitation with the child each month. The testimony cited by Father includes Mother's descriptions of the abusive nature of the parents' relationship, her lack of trust in Father, and her daughter's allegations of sexual abuse.

{¶15} The CSB caseworker testified that Mother told her that Father had been abusive to her and the child. She explained that Mother had gone to a domestic violence shelter to get away

from Father and that there were some sexual abuse concerns regarding Mother's daughter. In addition, the caseworker testified that both parents reported that they did not have a good relationship in North Carolina. Father told her that he believed that he was the victim of domestic violence by Mother, while Mother claimed to be the victim. Neither parent ever filed a complaint against the other and no police reports exist. The caseworker also testified that, while there were multiple child welfare intake investigations regarding the children in North Carolina, none of that agency's reports clarified which parent was the abuser.

{¶16} The testimony of Mother during questioning by both Father's and Mother's attorneys was merely duplicative of testimony provided by the agency caseworker. Moreover, the guardian ad litem reported that the parents do not get along and that Father did very little during the case to show Mother that he is trustworthy. A review of the transcript indicates that Mother did not testify or interject any information that the juvenile court did not have before it for consideration from other witnesses. Under those circumstances, Father has failed to demonstrate that his trial counsel's performance prejudiced him or resulted in a judgment that would otherwise not have been supported.

{¶17} The evidence adduced at the hearing from the testimony of the caseworker, guardian ad litem, and Father, as well as Mother's unchallenged testimony, supports limiting Father's visitation with the child. Father requested in person visitation with R.L. on only two occasions during the entire year the case pended. He could not explain why it was too difficult for him to give one week's notice of his intent to visit when he did not have a job or other commitments limiting his ability to travel to Ohio. By failing to visit with the child, he had not demonstrated to the caseworker and guardian ad litem that he was able to provide a safe and healthy environment for R.L. In addition, by revoking his release of information to the

caseworker, Father prevented the caseworker from investigating and determining whether Father was addressing or had remedied concerns identified during his mental health assessment. The juvenile court awarded Father twice as much in person visitation as had been available to him throughout the case. In addition, he was not foreclosed from seeking a modification of the visitation order in the future.

{¶18} In conclusion, the hearing evidence supports the restrictions on Father's visitation with the child. Mother's testimony and interjections referenced by Father in his brief did not provide any information beyond what other witnesses presented. Accordingly, Father has not demonstrated the requisite prejudice to establish a claim of ineffective assistance of counsel. Father's assignment of error is overruled.

## III.

{¶19} Father's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

BARBARA J. ROGACHEFSKY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.